## William T. Ingram v. Thomas Reiman.

1.  BURDEN OF PROOF—*Under Verified Pleas.*—Under a verified plea denying the execution of the instrument sued upon, the execution of such instrument must be proven as at common law, before it can be read in evidence, but the common law never required the execution of an instrument to be proven by evidence which could not be rebutted, or beyond all reasonable doubt.

2.  EVIDENCE—*Under Pleas Denying the Execution of Written Instruments.*—Where the execution of an instrument sued on is denied by a verified plea, evidence should be adduced, which, if uncontradicted, would be sufficient to satisfy all reasonable minds that the instrument was in some way executed by the person by whom it purports to have been made.

Assumpsit, on a promissory note. Trial in the Circuit Court of Jackson County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Verdict and judgment for plaintiff; error by defendant. Heard in this court at the August term, 1898. Affirmed. Opinion filed March 10, 1899.

**Statement of the Case.**—November 9, 1895, defendant in error loaned to George W. Hill $500, and for it Hill brought and delivered to him a note of that date for that

sum, payable to the order of defendant in error, twelve months after date, with interest at seven per cent per annum, purporting to be signed by plaintiff in error, Geo. W. Hill and Hill & Martin, in the order stated. Hill was a son-in-law of plaintiff in error, and was a copartner of James H. Martin.

August 15, 1896, Hill paid $100 on the note, and after that paid the interest on it to November 9, 1896, and both payments were duly indorsed thereon. Hill has since died.

Suit having been brought on the note against plaintiff in error alone, he interposed a plea duly verified, denying the execution of it, with a further plea, which it is unnecessary to notice.

Issue having been joined, the cause was tried by a jury, who returned a verdict for $439.85 in favor of defendant in error, on which, after overruling a motion of plaintiff in error for a new trial, the court rendered judgment.

R. J. STEPHENS, attorney for plaintiff in error.

A. B. GARRETT, attorney for defendant in error.

MR. JUSTICE BIGELOW delivered the opinion of the court.

The grounds of error relied upon for a reversal of the judgment are, the admission of improper evidence on behalf of plaintiff below, the giving of improper instructions asked by plaintiff; and that the verdict is contrary to both the law and the evidence, as well as to the weight of the evidence.

The first point made is, (in the language of counsel): "Under a verified plea denying the execution of the instrument sued upon, its execution must be proven as at common law before it can be read in evidence." A number of authorities are cited and many others might be adduced, sustaining the proposition, but none are needed. The proposition is axiomatic; but the common law never required the execution of an instrument to be proven by evidence that could not be rebutted, or beyond all reasonable doubt,

before it could be read to the jury.   What it required was, that evidence should be adduced which, if uncontradicted, would be sufficient to satisfy all reasonable minds that the instrument was in some way executed by the person by whom it purports to have been made.   The question whether the instrument admitted in evidence was the note of plaintiff in error was for the jury to determine, after hearing all the evidence on both sides, while the question for the court to determine was, whether there was evidence already before it tending to prove that plaintiff in error executed the instrument.   Without stating here what the evidence before the court was, we think it sufficient to warrant the court in admitting the note in evidence, and that it committed no error in overruling the objection of defendant below to its introduction.

We need not stop to inquire whether the state of the pleadings was such that the plaintiff could not prove a ratification of the note under the issues made, or whether defendant must have participated in the consideration in order to have become bound by the ratification; or whether the ratification must have been made with a full knowledge of all of the facts; or whether a ratification is not to be implied from a doubtful state of facts, as insisted by counsel for plaintiff in error, since no claim was or is made by defendant in error that plaintiff in error ratified the execution of the note by some other party, who had signed his name without authority to do so; hence the authorities cited by counsel in support of the several contentions need no examination, and all may be conceded to be correct for the purposes of this case.

Plaintiff's instructions, all of which were severally objected to, are as follows :

" I.   The court instructs the jury that it makes no difference whether the defendant, Ingram, signed the note in question as principal or as security; his liability to pay the note would be the same, in either case (if you find from the weight of the evidence he did sign the note).   The words above in parenthesis being added by the court to the instruction, as requested.

"II.    The court further instructs you in this case, that if you believe from the preponderance of the evidence that the defendant, Ingram, placed his name upon the note in question, either as principal or as security, or if you believe from the evidence that he consented to the placing of his name there by any one else, then your verdict should be for the plaintiff.

"III.    The court instructs you that in determining where the weight or preponderance of the evidence lies in this case, you have a right to take into consideration all the facts and circumstances in evidence, together with the conduct of the parties to this suit with reference to said note, so far as the same has been shown by the evidence.

"IV.    The court instructs you that in this State the law permits parties to contract for the payment of interest on money at the rate of seven per centum per annum.    And the court further instructs you that the payment of interest already due on a note, and the acceptance of the same by the holder of a note, where the rate of interest is lawful, such payment of interest does not constitute usury, nor does it constitute such compensation for extension of time as would release securities on such note."

Defendant, in his third plea, set up the fact that he received no consideration for the note, and followed it with some evidence to sustain the averment, and what use, if any, was made of the evidence before the jury to make it necessary to give the instruction we have no means of knowing. The instruction embraced a correct proposition of law, and in any event it did not prejudice defendant.

The objection to the second and fourth instruction is, that there was no evidence on which to base them.    The objection is not well taken.

The third instruction is objected to, because its effect was to mislead and confuse the jury.

We think the jury were neither confused nor misled by it; but possibly they might have been, had the instruction been as it appears in the abstract.

The court, at the request of defendant, gave to the jury one instruction only, and it so completely covered the law of the entire case made by the evidence, as to leave the jury in no doubt as to their duty, whatever the other instructions may have been, and it is as follows:

" Before the jury would be warranted in finding a verdict for the plaintiff you must believe and find, from the weight or preponderance of the evidence, that defendant Ingram actually signed or authorized the signing of the note in question. If the evidence on that question is equally balanced, your verdict should be for the defendant, and on that question the note itself should not be considered."

It is insisted by counsel for plaintiff in error that there was absolutely no evidence before the jury that plaintiff in error executed the note. No one testified that he saw the note executed or that the signature was in the handwriting of defendant. Neither did any witness, not even defendant himself, testify it was not his signature; and although one witness was called by the defendant, who, from his familiarity with defendant's handwriting, certainly ought to have known and been able to state distinctly whether it was his handwriting or not, he left the matter in doubt.

Plaintiff testified that the morning of the day he let Hill have the money he brought into town a load of wheat and saw Hill coming from the direction of Dr. Ingram's office with a piece of paper in his hand, and says: " It looked like a note doubled up. I went right from there, got my money for the load of wheat, and went up to Mr. Hill's office and let him have the money and received the note." He further testified that afterward, and before the $100 payment was made on the note, he was informed by certain parties that Hill was liable to fail, and for that reason he called on Dr. Ingram, and says : " I took the note to Dr. Ingram's office and presented him the note, and said : ' Doctor, is that your note or Hill's note;' and he said, ' Hill's note, and I am security on it.' That is just exactly what the doctor said." He further testified that the reason he put the question in the shape he did was because Dr. Ingram's name is first on the note.

Dr. Ingram's version of the conversation is as follows : " I never saw this note till this man came into my office and said to me, ' I have come to see you about your note.' I said to him, ' Have you got a note on me ?' and he said ' Yes.' I said, ' Where did you get it ?' ' From Mr. Hill.'

I said, 'What did you give Hill for it?' He said, 'I loaned him some money for it.' I said, 'Have . you got the note with you?' He said, 'Yes.' 'Let me see it.' He then took the note out and showed it to me. There was not any credits or anything on it. I said, 'Mr. Reiman, I never saw this note before; I do not know anything about it; you say you got it from Mr. Hill?' 'Yes.' I said, 'You take it and go to Mr. Hill; I do not know anything about it; I never saw it before; I never got no money from you, and I do not owe you anything.'"

Not all evidence can be described in language; and sometimes matters that are exceedingly potential when seen, heard or felt, lose much or all of their force when an attempt is made to portray them in writing; hence those who are present at the giving of testimony by witnesses who disagree are in a much better condition to determine which is mistaken, or which has testified falsely, than a court is which has only a written or printed statement of what occurred before it. All of the evidence except the note was oral. The court and jury heard the witnesses testify, and the jury, by their verdict, have determined on which side the evidence preponderated, and the Circuit Court being satisfied with its determination, we are unable to say that both are wrong and that the verdict is unsupported by the evidence, and accordingly the judgment is affirmed.